Colt, Circuit Judge.
This bill in equity alleges the infringement of letters patent No. 164,425, dated June 15, 1875, issued to Stephen Chester. The invention relates to an improved form of signal box for the transmission of fire-alarm or other electro-telegraphic signals. The mechanism is somewhat complicated. It is only necessary in this case to particularly examine that part of the contrivance covered by the third claim. The Chester signal box has within the case an interior box which is described as containing a combination of gear-work capable of causing any electrical circuit closing and breaking devices to move with uniform speed, when the weight or spring necessary to produce motion shall be attached thereto and shall be wound up. The patentee further says:
“It has been customary to use clock-springs inclosed within this circular box, C, for impelling the said machinery, which, in very cold weather, are liable to fracture, or to inequality of motive force when subjected to greatly varying degrees of temperature; hence, in many parts of the country, demands have been made to have weights substituted to drive the machinery, which operate outside the box, 0. The objection to this latter mode of propulsion has been that the method of winding up the machinery has been such that the weight would be raised with a sudden, impulsive motion, frequently *472 catching in the upper corner of the box, or.its attachment to the arm, D2, would be broken. This difficulty would be obviated if the method of winding were such that the weight would be raised with a steady and uniform motion.”
The third claim has reference to the winding apparatus. A bell-crank lever is fixed upon the end of a shaft, and by revolving actuates the transmitting machine. One arm of this lever is attached to a weight, and the other arm is made in the form of a cogged sector or wheel, the teeth of which engage with a pinion. This pinion is so held upon a shaft that it can slide thereon in a longitudinal direction, and revolve loosely upon it. To the end of the shaft is fixed a disk, and the pinion is normally pressed towards the disk by a spiral spring surrounding the shaft. The shaft is also pressed outward by a spiral spring within its standard, which standard is fixed to the side of the box. The shaft is prevented from being thrown out from its bearing by a screw which normally rests in a longitudinal groove upon the surface of the shaft. In this position the shaft cannot be rotated, but the groove permits the shaft to be pressed backward against the force of the spring behind it until the screw is opposite a transverse groove surrounding the shaft, and when in this position the shaft can be rotated. Upon the cessation of pressure upon the spring the shaft will return to its normal position. On opposite sides of the door of the box are two plates, and held between them is a ratchet wheel which is engaged by a pawl, and so permitted to revolve only in one.direction. The keyhole is cut through the plates, ratchet wheel, disk upon the end of the shaft, and into the pinion. The key is so shaped that when pressed in the proper distance it will revolve, and will turn with it the ratchet wheel, disk, and pinion, and thus permit the shaft to rotate. When the key is thus rotated the pinion winds up the transmitting mechanism, and the ratchet wheel prevents the key being rotated in the reverse direction, or withdrawn from the box, before the full rotation of the pinion and the winding up of the motor. The results accomplished by this form of apparatus are stated by the patentee, as follows:
“It is equally evident that, if the proper key be introduced and turned in the only direction permitted by the ratchet wheel, H, it will cause the weight, S, to be raised, or an equivalent effect be produced if a spring be used. Also, it is evident that the key must make an entire revolution before the pin, e, can escape from the transverse groove, d, into the longitudinal groove, c, of the shaft, 3?. When, however, this revolution has been performed, precisely as one would lock or unlock a lock, if no severe pressure be made upon the key at that moment it will be thrown out by the recovery of the spring under the shaft, 3?, and so soon as the points of the key escape from the slot or keyhole of the pinion, the latter, being entirely free, will be caused to revolve in the opposite direction .by the descent of the weight, S, and consequent movement of arm, D1, and the key cannot re-engage in the said slot or keyhole until the revolution of the pinion has again brought the keyholes opposite to each other. * * * When the key has once been turned and thrown out, as above described, it is impossible to reintroduce it, or in any way interfere with the evolutions of the interior machinery, until it has completed the functions assigned to it.”

*473

*474 The utility of this ingenious contrivance seems to consist largely in preventing persons making mistakes in sending in an alarm. When the key is once inserted, and the turning begins, it cannot be turned backwards, and so send in a partial signal, but it must be turned until its rotation is completed. When the signal has been transmitted, the citizen is prevented from again turning the key around in the keyhole, as the spring behind the shaft tends to throw it out. By this method of winding up the machinery by means of the key and the pinion engaging the cogged sector upon the winding lever, a method of winding is provided whereby the weight is raised with a steady and uniform motion, and sudden jerks avoided.
The patentee originally sought, as shown by the file wrapper and contents, to obtain the following broad claim:
“In combination with any signaling apparatus, the winding up and preparing for action the motive force of said apparatus by turning the key or similar device inserted in the keyhole of a closed door or cover.”
This was rejected, and claim 3, which embraces specifically the pinion, wheel sector, and key as elements in the combination, substituted.
The defendant’s signal box does not, it seems to me, contain the specific devices, or their equivalents, covered by the third claim of the Chester patent. To be sure, it has a transmitting mechanism composed of a break wheel actuated by a spring, which was old at the date of the Chester patent, but the structure has not the peculiar shaped key, or the pinion for winding up the transmitter, or the cogged sector attached to. the winding shaft, of the Chester patent, and which are the special features of the third claim thereof, nor does it accomplish the useful results specified by Chester. The key in defendant’s box can be partly turned, and then turned back; it is not thrown out at the end of its revolution; nor does the winding mechanism operate so as to produce a steady and uniform motion. On the contrary, the key is turned only for a short distance, and moves the winding shaft at constantly increasing speed. In this apparatus an ordinary key is inserted through a keyhole, the barrel fitting upon a post, and upon being turned a quarter of a circle its bit engages with a projection upon an arm, and upon being further turned this arm pulls down a slide. This slide has a stud upon it, which lies upon the upper side of another arm attached to the winding shaft. When the slide is pulled down by the operation of the first arm actuated by the key the winding shaft is rotated. •
A comparison of the defendant’s signal box with the Chester box, with respect to the devices covered by the third claim, shows such dissimilarity that there can be no infringement, unless a very broad construction should be given to the claim. This is unwarranted in view of the proceedings which took place in the patent office, and of the state of the art at the time. I do not think it necessary to enter upon an examination of the prior art as disclosed in the record. It is sufficient to say that the combination of a pinion, wheel, sector, or rack, with a key, or its equivalent, passing through an orifice in a door for the purpose of winding a spring or raising a weight, was old and well known at the time of the *475 Chester invention. It follows that the third claim of the Chester patent should be limited to the devices, or their equivalents, set forth in that claim, and these are not found in the defendant’s structure.
Bill dismissed, with costs.